(Hamilton County Common Pleas Court.)
June 1898.
MARY EISLEIN, v. CHAUNCEY D. PALMER.

1. A physician, when he accepts employment, obligates himself that he will exercise reasonable and ordinary skill in the discharge of such employment.

2. A physician is under no obligation, while a party is his patient, to tell patient or near relatives that broken fragments of needles have been left in the body.

DAVIS, J.

Mrs. Mary Eislein gave birth to her only child in 1871. During said child birth there was a severe laceration of the perineum, extending from near the spincter ani obliquely along the back wall of the vagina nearly to the cervix uteri. Mrs. Eislein states that the attending physician (who is now dead) did not do anything to repair said injury, and that she did not consult any physician until the early part of 1886, and that she was gradually getting worse during said period of fifteen years of neglect. During the year 1886 Dr. Palmer performed on Mrs. Eislein three operations —one was upon the womb, by cutting the same, and two upon the perineum; the second operation upon the perineum was a success as to the lower two-thirds of the same, but as to the upper one-third, from some causes unknown, the healing was by secondary intention, and the new tissues thus formed is what is called cicatricial tissue, and is usually hard, morbid or unnatural. For the purpose of removing this scar tissue and have union of the parts by first intention. Dr. Palmer performed the fourth operation on April 21, 1888. Mrs. Eislein was properly placed under the influence of anaesthetics, and said cicatricial tissue was removed in the usual way, by use of a surgeons' scissors. While Dr. Palmer was passing the sutures, possibly the second or third, his needle broke. He immediately made a search for the broken fragment of the needle for ten or twelve minutes, by introducing the finger into the rectum, also a finger in the vagina, pressing the parts between the two fingers; but the said fragment of needle could not be found by touch or by sight. Then the clothes of the patient, operating table and sponges were examined, but no traces of same could be found. Dr. Speidel, who was administering the anaesthesia to the patient, informed Dr. Palmer that Mrs. Eislein was not doing well, and was becoming very weak under the influence of the anaesthetics; without the actual knowledge of the fragment of the needle being in the perineum, except it could not be found elsewhere, Dr. Palmer placed the remaining sutures in position and closed the operation as speedily as possible. He visited Mrs. Eislein April 22, 23, 24, 25, 26, 29 and 30 also May 2, 4 and 6, 1888, and examined the wound several times, as far as it was advisable without endangering the success of the operation, to see if he could locate the fragment of said needle, but same could not be located. On May 4, or 6, 1888, the stitches were removed, the healing was progressing favorably and apparently by primary union. Mrs. Eislein on May 6, desired to leave the hospital for her home, Dr. Palmer ordered her to remain until May 8, at which time he would give her final instructions; but about noon May 6, the horse of Dr. Palmer ran away, throwing

the doctor out of his buggy upon his head, and he was not able for months thereafter, either mentally or physically, to attend to any business, and was therefore sudden'y removed from the case. Dr. George E. Jones was called in, and on the 8th day of May, 1888, he made an examination of Mrs. Eislein, and he found everything favorable to a successful recovery, and gave orders she could go home on the 11th day of May, which she did. After she returned home she complained of pains in the pelvic region, and the same became more intense in the early part of 1889. During the latter part of 1888 or early part of 1889 she received some local treatment from Dr. Koehler; but some time in the early spring of 1889 Mrs. Eislein consulted Dr. George E. Jones, complaining there was something the matter with her ovaries. Thereupon Dr. Jones called in Dr. W. H. Wenning, and upon careful examination Drs. Jones and Wenning came to the conclusion that the symptoms of Mrs. Eislein pointed to the cicatricial tissue, which had formed where Dr. Palmer had performed his last operation. It was then agreed by Drs. Jones and Wenning that this cicatricial tissue should be removed, and on April 7, 1889, Drs. Jones and Wenning, while in the act of cutting the same, cut in upon the needle, and Dr. W. H. Wenning, by the use of forceps, caught the end of the fragment of needle and pulled the same out. This fragment of needle was completely surrounded on all sides and ends by this cicatricial tissue, and in the same position it was left when it was originally broken. This operation was practically the same operation as the one performed by Dr. Palmer the year before. After this operation Mrs. Eislein became stronger and healthier than she had been since the birth of her only child in 1871.

The case was submitted to the jury, and a verdict was returned for the defendant. It is now urged by counsel for plaintiff that the verdict was contrary to the evidence and contrary to law.

Was this verdict contrary to the weight of the evidence? A surgeon and physician, who holds himself out as such to the public, and accepts employment as such for pay, does so under such obligations which are imposed upon him by the law. He takes upon himself the obligation when he accepts such employment that he will exercise fair, reasonable and ordinary skill in the conduct and discharge of that employment. The highest possible skill is not to be expected of him, but it is expected, and the law demands of a person holding himself out as a professional man, that he shall have such knowledge, such skill, and shall exercise such care as are ordinarily exercised by men in his profession in good standing in the community in which he resides. The evidence offered by both plaintiff and the defendant is manifest to the mind of this court, that Dr. Palmer exercised all

reasonable care and skill, and there was no negligence on his part.

Did the fragment of needle in the perineum cause any injury or pain? There is no dispute, that from the testimony of Mrs. Eislein, that she suffered the greatest pains during the early months of 1889, and probably immediately preceding the date when Drs. Jones and Wenning operated upon her for the removal of he cicatricial tissue. When the needle was found, it was thoroughly imbedded in this cicatricial tissue. Dr. Jones was a witness for the plaintiff, and on pages 31 and 32 in his evidence given at a former trial, which evidence was offered in this court, he testified as follows:

"Q. What was the character of the tissue between the needle and the rectum?

"A. The needle was buried in the cicatrical tissue.

"Q. How far below the needle did the cicatrical tissue extend?

'A. A very little ways.

"Q. In distance how far would you say?

"A. Well, I can't say. Perhaps not more than an eighth of an inch; perhaps a little more.

"Q. Were the points of the needle in the cicatricial tissue?

"A. Yes, sir.

"Q. Beyond the point how far did the cicatricial tissue extend?

'A. Well, perhaps may be a quarter of an inch.

"Q. Upon both points?

"A. Yes, sir.

"Q. Did you measure the extent of the cicatricial tissue beyond the points?

"A. No, sir; only I know it was beyond the points the needle was completely imbedded in the cicatricial tissue.

"Q. Whereabouts; the entire needle?

"A. The entire piece of needle was thoroughly imbedded in the cicatricial tissue."

It is conceded by all that cicatricial tissue is non-sensitive, and that it does not contain nerves. This being the case, the needle surrounded by it as the evidence shows (which fact is not disputed by any evidence) could not cause any pain as it was clearly a physical impossibility for it to cause any injury in its situation and condition; but there was pain, there can be no doubt, and it evidently came from the ends of the nerves being caught or pinched by the outer edges of this cicatricial tissue, which is a common occurrence as shown by the expert testimony given, and just such pain as described by Mrs. Eislein in her case. A foreign body left in the human body, by accident or design, will do one of two things —it will either migrate and reach the surface at a point where there is least resistence, or become encysted, and when encysted, it is a painless, harmless body. The testimony in this case strongly proves that this fragment of needle in question was perfectly encysted. What caused all this cicatricial tissue can not be so readily or

satisfactorily answered, but suffice to say that the evidence of all the learned experts agree that the retention of the fragment of the needle in the perineum did not cause it or produce it, or would have any tendency to produce it.

Dr. Palmer did not tell Mrs. Eislein or her husband that he had broken and left a fragment of a needle in the perineum, and it is claimed by the plaintiff that this was negligence on the part of the defendant. Dr. Palmer was under no obligation to tell Mrs. Eislein or her husband, while she was his patient, that a needle had been broken and part left in her body, but that it was his duty to tell her when he would discharge her as his patient from his care as such physcian; to tell her would only be to endanger the success of the operation. Dr. Palmer did not have to anticipate dangerous and unavoidable accidents, but he had a right to expect that he would be able to attend to Mrs. Eislein until she got well.

This verdict is not against the weight of the evidence or the law, and motion for new trial will be overruled.

Burch & Johnson, for plaintiff.

John S. Connor and Charles J. Hunt, for defendant.